IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSÉ VILLAMÍA,

    **Plaintiff,**

        **v.**

MVP AUTO CORP.; JOSÉ MEDINA
and his wife NATALIA MAZORRA,
in representation of their
conjugal partnership;
DR. PEDRO MEDINA and his wife
NILDA MEDINA, in
representation of their
conjugal partnership;
JOHN DOES 1 AND 2; ABC CORP.;
XYZ CORP.,

    **Defendants.**

**Civil No.** 19-1701 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

This case involves plaintiff José Villamía ("Villamía")'s employment discrimination allegations. (Docket No. 1.) Villamía asserts claims pursuant to federal and Puerto Rico law.[1] Id. at pp. 13–17.

---

[1] The Court is satisfied that Villamía's claims pursuant to the Age Discrimination in Employment Act arise under federal law. 28 U.S.C. § 1331; see Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 377 (2012); Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 27–28 (1983). The Court is also satisfied that Villamía's claims pursuant to the laws of the Commonwealth of Puerto Rico are "so related" to his federal claims "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); see United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

Before the Court are three responsive filings.  Defendants José Medina and Natalia Mazorra, in representation of their conjugal partnership ("the Medina-Mazorra conjugal partnership"), filed a motion to dismiss.  (Docket No. 12.)  Defendants Pedro Medina and Nilda Medina, in representation of their conjugal partnership ("the Medina-Medina conjugal partnership"), also filed a motion to dismiss.  (Docket No. 19.)  Defendant MVP Auto Corp. ("MVP") filed an answer and a request for dismissal of the complaint.  (Docket No. 13.)

As discussed below, the motion to dismiss filed by José Medina and the Medina-Mazorra conjugal partnership, (Docket No. 12,) is **GRANTED**.  The motion to dismiss filed by Pedro Medina and the Medina-Medina conjugal partnership, (Docket No. 19,) is **GRANTED IN PART AND DENIED IN PART**.  MVP's request for dismissal of the complaint, (Docket No. 13,) is **DENIED**.

## I.   Background

### A.   Factual Background

The Court draws the following facts from the complaint. (Docket No. 1 at pp. 1-17.)  The facts are also drawn from a document attached to the complaint, which is a notice of Villamía's right to sue from the Equal Employment Opportunity Commission ("EEOC").  Id., Ex. 1.

The Court also considers the document appended to the Medina-Mazorra conjugal partnership's motion to dismiss. (Docket No. 12, Ex. 1.) The document is a charge of discrimination by Villamía presented to the EEOC on July 18, 2018. Id. Villamía's administrative charge is a "document[] the authenticity of which [is] not disputed by the parties; . . . official public record[]; . . . document[] central to [Villamía's] claim; or . . . [a] document[] sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); see Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19, 25 (1st Cir. 2018); Brennan v. Zafgen, Inc., 853 F.3d 606, 609–10 (1st Cir. 2017). No party disputes the authenticity of the administrative charge. There is ample precedential support for considering Villamía's administrative charge, (Docket No. 12, Ex. 1,) and the EEOC's responsive authorization to sue, (Docket No. 1, Ex. 1,) as linked to his complaint, see, e.g., Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005); Barber v. Verizon New Eng., Inc., Civ. No. 05-390, 2005 WL 3479834, at *1 n.1 (D.R.I. Dec. 20, 2005); Maldonado-Cordero v. AT&T, 73 F. Supp. 2d 177, 185 (D.P.R. 1999) (Pieras, J.), overruled on other grounds by Rosario Toledo v. Distribuidora Kikuet, Inc., 151 D.P.R. 634 (2000), as recognized in Bonilla-Pérez v. Citibank NA, Inc., 892 F. Supp. 2d 361, 366 (D.P.R. 2012) (Casellas, J.).

The Court takes as true the allegations of the complaint. _Zenón v. Guzmán_, 924 F.3d 611, 615 (1st Cir. 2019).  The Court also draws any inference from those allegations in Villamía's favor.  _Id._

MVP sells Toyota cars along with associated parts and services.  (Docket No. 1 at pp. 3-4.)  It was founded in 1994. _Id._

Pedro Medina is the president and co-founder of MVP. _Id._ at pp. 4, 6.  Pedro Medina directly supervised Villamía from 1994 until 2017.  _Id._ at p. 6.

José Medina is Pedro Medina's son.  _Id._  He was executive vice president of MVP until 2017.  _Id._  He is approximately thirty-five years of age and has less professional experience than Villamía.  _Id._ at p. 7.

Villamía was born in 1966.  _Id._ at p. 5.  He has worked in the automobile market for more than thirty years.  _Id._  He began working for MVP in 1994 as a general manager.  _Id._ at p. 3.  During his time at MVP, he also worked as vice president of operations. _Id._ at p. 6.

Villamía had various functions as MVP's general manager. _Id._  He represented MVP before Toyota and financial institutions. _Id._  He also oversaw MVP's operations and provided input on important decisions.  _Id._  While working as general manager,

Villamía did not receive any disciplinary action or negative performance review.  Id.

Beginning in 2015 and continuing thereafter, Pedro Medina and José Medina began making comments related to Villamía's age.  Id.  Pedro Medina told Villamía on various occasions that representatives from Toyota considered Villamía "too old" and believed MVP needed "young blood."  Id.  José Medina made similar comments.  Id.

The age-related comments were followed by actions.  Id. Pedro Medina began excluding Villamía from meetings with Toyota representatives.  Id.  José Medina started acting as general manager in August 2017 and officially assumed the position in March 2018.  Id.

Meanwhile, Villamía was demoted to the position of used car purchasing manager.  Id. at p. 7.  His authority was diminished, and his duties changed.  Id.  His function was limited to buying used cars by phone and computer.  Id.  He also had to retrieve the cars from the docks, a function that used to be performed by couriers.  Id.  Unlike other managers, Villamía did not supervise any employee.  Id.

At the same time, Henry Ayala ("Ayala") was named general sales manager and Villamía's direct supervisor.  Id. He is younger than Villamía (Ayala is approximately forty-five years old) and

has less professional experience than Villamía. Id. The position of general sales manager was not discussed with, or offered to, Villamía. Id.

Additionally, Villamía was relocated to a small office used as a storage space. Id. at p. 8. The telephone was removed from the office, and another telephone was not installed in the office despite repeated requests and opportunities to do so. Id. Consequently, Villamía had to use his personal phone to perform his work functions. Id.

Villamía expressed discontent to Pedro Medina, José Medina, and the MVP human resources director. Id. Villamía was told by these persons and by Ayala that he would have to perform his newly assigned duties or MVP would "act." Id. at pp. 8-9. Villamía felt threatened and self-conscious about continuing to express discontent regarding the discriminatory actions. Id. at p. 9.

Afterwards, Villamía's attorney sent a letter to Pedro Medina to notify him of the discriminatory actions being taken against Villamía. Id. MVP's attorney denied the allegations. Id.

Less than a week after receiving that denial, Villamía received his first written warning in more than two decades of employment with MVP. Id. According to the warning, Villamía

failed to comply with MVP's process for purchasing used cars.  Id.
Before the day the warning was issued, MVP did not have a policy
for the process of purchasing used cars; the policy was created on
the same day Villamía was disciplined.  Id.

       During the time he suffered discriminatory treatment,
Villamía notified human resources personnel and his supervisors
about the discriminatory treatment he was receiving.  Id. at p. 11.
They did not remedy the situation.  Id.

       Approximately three months later, Villamía took three
days of sick leave due to health issues caused by his work
situation.  Id. at p. 9.  Villamía contacted MVP in the usual way
to let them know of the absences.  Id. at p. 10.

       When Villamía returned to work after those three days,
he was fired for abandoning his employment.  Id.  But, on the same
day, the human resources director confirmed Villamía's messages
about being sick and Villamía was reinstated.  Id.  Afterwards,
Villamía had a panic attack and left work that day.  Id.  He
notified human resources before leaving.  Id.  Villamía's
psychiatrist extended his rest period for another week.  Id.

       Within a day of the panic attack, Villamía's attorney
notified MVP's attorney that Villamía had filed a discrimination
charge against MVP with the EEOC.  Id. at p. 11.  That charge had
been filed a few weeks earlier.  Id.

The next day, July 14, 2018, Villamía received two dismissal letters by mail. Id. One letter dismissed him for job abandonment. Id. This letter was dated two days before Villamía received it (the day Villamía had returned from work, was fired, reinstated, and suffered the panic attack). Id. The other letter dismissed him for insubordination. Id. This letter was dated one day before Villamía received it (the day Villamía's attorney notified MVP's attorney of the administrative charge). Id.

After his dismissal, Villamía filed another charge of discrimination with the EEOC. Id. at p. 12. This charge of discrimination is attached to José Medina's and the Medina-Mazorra conjugal partnership's dismissal motion. (Docket No. 12, Ex. 1.) In the charge, Villamía described discriminatory actions perpetrated against him by MVP, Pedro Medina, and José Medina. Id. at pp. 1–5.

Villamía has suffered in various ways because of the discriminatory actions against him. (Docket No. 1 at p. 12.) He lost wages and related income. Id. He has also endured mental, emotional, and physical damages. Id.

**B.  Procedural Background**

The EEOC issued a notice of Villamía's right to sue on April 19, 2019. Id., Ex. 1 at p. 1. The notice was received on April 26, 2019. Id. at p. 12; id., Ex. 1 at p. 3.

Villamía filed his complaint on July 23, 2019.  See id. at p. 18.  He pleads seven causes of action.  Id. at pp. 13–17.

Four of Villamía's claims are made pursuant to the Age Discrimination in Employment Act ("ADEA").  Id. at pp. 13–14, 17; see 29 U.S.C. §§ 621–634.  He alleges that, as a result of being discriminated against because of his age by MVP, José Medina, and Pedro Medina (collectively, "defendants"), he is entitled to actual damages, compensatory damages, liquidated damages, attorney fees, back pay, medical costs, and salaries and benefits he will not earn if reinstatement is not practical.  (Docket No. 1 at p. 13.)  He also alleges entitlement to liquidated damages because of MVP's willful violation of the ADEA.  Id. at pp. 13–14. Villamía further alleges that defendants owe him back pay because they retaliated against him.  Id. at p. 14.  Finally, Villamía states that MVP is liable for attorney fees pursuant to 29 U.S.C. section 216(b), and prejudgment interest pursuant to Federal Rule of Civil Procedure 54.  (Docket No. 1 at p. 17.)

Villamía's three other claims are based on Puerto Rico law.  Pursuant to Puerto Rico Law 100, P.R. Laws Ann. tit. 29, §§ 146–51 ("Law 100"), he alleges that defendants are jointly liable to him because of an age-based hostile work environment and for termination, and he seeks double back pay, front pay, compensatory damages, and costs and attorney fees.  (Docket No. 1

at p. 15.)  Additionally, pursuant to Puerto Rico Law 115, P.R.
Laws Ann. tit 29, § 194a ("Law 115"), Villamía alleges MVP is
liable to him because of retaliation, and asks for damages
including double compensation, back pay, front pay *in lieu of*
reinstatement, compensatory damages, and costs and attorney fees.
(Docket No. 1 at pp. 15–16.)

        Villamía's final claim is in the alternative.  As an
alternative to the above claims (except the claim for attorney
fees and prejudgment interest pursuant to federal law), Villamía
alleges that he is owed a separation payment for unjustified
termination pursuant to Puerto Rico Law 80, P.R. Laws Ann. tit.
29, §§ 185a–185m ("Law 80").  (Docket No. 1 at pp. 16–17.)

        José Medina and the Medina-Mazorra conjugal partnership
moved to dismiss the claims against them.  (Docket No. 12.)  They
observe that Villamía's complaint only appears to allege two claims
against José Medina and the conjugal partnership—retaliation
pursuant to the ADEA and age discrimination pursuant to Law 100.
Id. at p. 3.  Nonetheless, they choose to discuss all the
allegations out of caution.  Id.

        José Medina and the Medina-Mazorra conjugal partnership
argue that none of the federal or Puerto Rico claims which Villamía
alleges provides for individual liability.  See id. at pp. 1–3.
They further argue that Villamía failed to toll the statute of

limitations applicable to the Puerto Rico claims against José Medina and the Medina-Mazorra's conjugal partnership.  Id.

Pedro Medina and the Medina-Medina conjugal partnership also filed a motion to dismiss.  (Docket No. 19.)  They joined and adopted the arguments set forth by José Medina and the Medina-Mazorra conjugal partnership.  Id. at p. 2.

MVP filed an answer.  (Docket No. 13.)  In addition to admitting, denying, or otherwise responding to allegations in Villamía's complaint, see id. at pp. 1–22, MVP included a litany of sixty-two affirmative defenses, see id. at pp. 22–28.  At the end of the list, MVP asks the Court to dismiss the complaint.  Id. at p. 28.

## II.  Legal Standard

Rule 12(b)(6) permits a defendant to move to dismiss an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive the motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged.  Ocasio-Hernández

v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels [a court] to draw on [its] judicial experience and common sense."  Zenón, 924 F.3d at 616 (internal quotation marks omitted). A court must decide whether the complaint alleges sufficient facts to "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  The burden is on the plaintiff to allege a viable cause of action plausibly.  Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016).

Assessing the adequacy of a complaint in the First Circuit involves two steps.  Zenón, 924 F.3d at 615–16.  First, a court "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  Id. at 615 (internal quotation marks omitted). Second, the court "take[s] the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor" to "see if they plausibly narrate a claim for relief."  Id. at 615–16 (internal quotation marks omitted).

## III. Discussion

### A.  MVP's Request for Dismissal

Neither MVP's request for dismissal nor its list of affirmative defenses includes developed argumentation on why the Court should dismiss the complaint at this stage of the proceeding. See Docket No. 13 at pp. 22–28.  Rather, the list introduces new facts and conclusory statements such as "Plaintiff's claims fail to meet the Twombly/Iqbal standard of pleadings."  Id. at p. 26. For current purposes at least, any issue raised by MVP is "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," and thus is "deemed waived."  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); see Rodríguez v. Mun. of San Juan, 659 F.3d 168, 175 (1st Cir. 2011).

### B.  Individual Liability Pursuant to ADEA

The ADEA prohibits an employer from discriminating against an individual because of that individual's age. 29 U.S.C. § 623(a).  An employer is "a person engaged in an industry affecting commerce who has twenty or more employees . . . .  The term also means . . . any agent of such a person."  Id. § 630(b). In light of these provisions, the question arises as to whether the ADEA provides for individual liability.

The United States Supreme Court and the First Circuit Court of Appeals have not yet decided whether the ADEA provides

for individual liability. See Age Discrimination in Employment Law at 3-8 to -9 (Eric E. Kinder et al. eds., 3d ed. 2018) [hereinafter "Age Discrimination in Employment Law"]; see also Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 56 n.6 (1st Cir. 2000) (taking no view on the question). Most circuits have held, however, that there is no such liability. See Age Discrimination in Employment Law at 3-8 to -9.

District courts in the First Circuit have held there is no ADEA individual liability. One district court said "it is virtually impossible to imagine" that the First Circuit Court of Appeals would find individual liability in the ADEA in light of (i) the similarities between the ADEA and Title VII and (ii) the holding from the First Circuit Court of Appeals that there is no individual liability pursuant to Title VII. Gascard v. Franklin Pierce Univ., Civ. No. 14-220, 2015 WL 1097485, at *7 (D.N.H. Mar. 11, 2015) (citing Fantini v. Salem State Coll., 557 F.3d 22, 30–31 (1st Cir. 2009)). This Court similarly explained, "We have previously found that neither ADEA nor Title VII provide for individual liability." Henao-Henao v. Linde Gas P.R. Inc., Civ. No. 13-1428, 2014 WL 4537019, at *3 (D.P.R. Sep. 11, 2014) (Pérez-Giménez, J.).

As this Court has previously explained, however, the First Circuit Court of Appeals has provided for individual

liability in employment contexts through a narrow exception. López-Rosario v. Programa Seasonal Head Start/Early Head Start de la Diocesis de Mayagüez, 245 F. Supp. 3d 360, 370–71 (D.P.R. 2017) (Besosa, J.). The exception applies to "'corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment.'" Id. (quoting Chao v. Hotel Oasis, Inc., 493 F.3d 26, 34 (1st Cir. 2007)). For instance, a corporation's president with "ultimate control" over the corporation's day-to-day operations could be held individually liable pursuant to the Fair Labor Standards Act. Chao, 493 F.3d at 33–34. In López-Rosario, this Court contemplated the application of this exception to an ADEA claim but concluded that the facts did not come within the exception. 245 F. Supp. 3d at 370–71.

Here, it is plausible that Pedro Medina fits within the exception discussed in López-Rosario and Chao. Pedro Medina is the president and co-founder of MVP. (Docket No. 1 at pp. 4, 6.) As such, Pedro Medina's motion to dismiss the ADEA claim against him, (Docket No. 19 at p. 2,) is **DENIED WITHOUT PREJUDICE**. Additionally, because Pedro Medina may incur individual liability,

the Medina-Medina conjugal partnership's motion to dismiss the ADEA claim against it, (Docket No. 19 at p. 2,) is also **DENIED WITHOUT PREJUDICE**. See Morales-Figueroa v. Valdés, Civ. No. 15-1365, 2016 WL 1171512, at *6 (D.P.R. Mar. 24, 2016) (Domínguez, J.) (discussing conjugal partnership liability).

There is no plausible basis for José Medina to come within the exception discussed in López-Rosario and Chao. José Medina and the Medina-Mazorra conjugal partnership's request to dismiss the ADEA claims against them, (Docket No. 12 at p. 5,) is **GRANTED**.

## C.    Individual Liability Pursuant to Law 100

"Puerto Rico Law 100, like the ADEA, provides a cause of action in favor of those persons who suffer discrimination in their employment because of their age." Álvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 27 (1st Cir. 1998) (internal quotation marks and alteration omitted). The law provides for civil liability against

> [a]ny employer who . . . discriminates against an employee regarding his/her . . . terms, rank, conditions or privileges of his/her job, . . . or who limits or classifies his/her employees in any way which tends to deprive a person of employment opportunities, or that affects his/her employee status because of his/her age.

P.R. Laws Ann. tit. 29, § 146. Law 100 defines the term "employer" to "[i]nclude[] any natural or juridical person employing

laborers, workers or employees, and the chief, official, manager,

officer, managing partner, administrator, superintendent, foreman,

overseer, agent or representative of such natural or juridical

person." Id. § 151(2).

This Court first considers whether the definition of

employer clearly and unambiguously resolves whether Law 100

provides for individual liability in the circumstances of this

case. If the answer is yes, the Court need not go further because

"[w]hen a law is clear and free from all ambiguity, the letter of

the same shall not be disregarded, under the pretext of fulfilling

the spirit thereof." P.R. Laws Ann. tit. 31, § 14. As the Supreme

Court of Puerto Rico explained,

> Discovering and implementing the true aims of the
> Legislative Power is a guiding principle of
> hermeneutics. To fulfill this purpose, courts must
> first heed the letter of the statutory provision at
> issue . . . . In view of such clarity and lack of
> ambiguity, there is no need to look beyond the letter of
> the law in search of the legislative intent. When the
> law is clear, it is not subject to interpretations.

Rosario-Toledo v. Distribuidora Kikuet, Inc., 151 D.P.R 634 (2000)

(translated at Docket No. 31, Ex. 1 at p. 4) (citation omitted).

The plain language of the definition of employer in

Law 100 arguably provides for individual liability. The ordinary

interpretation of the provision is that an employer may be both a

(i) "natural or juridical person employing laborers, workers or

employees," and (ii) persons occupying any of the positions listed in the law, i.e., "the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or juridical person." See P.R. Laws Ann. tit. 29, § 151(2). This interpretation is strengthened by the comma separating the two clauses, because the comma demarcates the listed positions from the preceding clause which suggests that the two clauses are independent ways a person can be considered an employer. See id.; see also P.R. Laws Ann. tit. 31, § 15 ("The words of a law shall generally be understood in their most usual signification, taking into consideration, not so much the exact grammatical rules governing the same, as their general and popular use."). Additional support arises from the observation that there would be little reason to include the long list of positions if the only aim were to provide for respondeat superior liability.

This interpretation finds support in the caselaw. In Rosario, the Supreme Court of Puerto Rico evaluated whether the term "employer" in three anti-discrimination laws, including Law 100, provides for individual liability. See Docket No. 31, Ex. 1 at pp. 1, 4. The Rosario court said that the three laws are "clear and free from ambiguities" because "[t]heir definitions of 'employer' include the employer's supervisors, officials,

administrators and agents, and invoke the unequivocal intention of the Legislative Assembly to make them liable for workplace sexual harassment acts when committed by them." Id. at p. 4. The Rosario court also distinguished federal caselaw construing Title VII because "[o]ur statute—which is the one at issue here—has a much wider scope than the mentioned federal statute, since it includes all kinds of employers, regardless of the number of employees they may have, as well as their supervisors, officials, administrators, and agents." Id. The Rosario court also noted that the legislative intent "to encourage the employer's affirmative and concrete participation in order to guarantee an environment of respect and dignity for all workers" would be thwarted were an employer held liable while direct tortfeasors escape liability. Id. at p. 5.[2]

Further, the Supreme Court of Puerto Rico recently characterized a definition of the term employer in Law 69 (a definition practically identical to the definition applicable to

---

[2] Villamía suggests that the Supreme Court of Puerto Rico's decision in Rodríguez-Cruz v. Padilla-Ayala, 125 D.P.R. 486 (1990) (translated at Docket No. 37 at p. 4) also supports individual liability pursuant to Law 100. See Docket No. 18 at p. 4; Docket No. 37. The contested questions in Rodríguez-Cruz, however, do not involve individual liability. See Docket No. 18 at p. 4. In any event, as discussed below, the Supreme Court of Puerto Rico's recent decisions are persuasive in this Court's estimation of how the Supreme Court of Puerto Rico "would probably rule in a similar case." King v. Order of United Commercial Travelers of Am., 333 U.S. 153, 161 (1948); see also 19 Charles Alan Wright et al., Federal Practice and Procedure § 4507, at 114 (3d ed. 2016) (discussing how federal courts sitting in diversity determine the content of applicable state law).

Law 100) as "broad."  Caballer-Rivera v. Adriel Toyota, 200 D.P.R.

120 (2018) (translated at Docket No. 31, Ex. 3 at p. 5).  Law 69

provides that the term "employer" "[i]ncludes any natural or

juridical person that employs laborers, workers or employees, and

the chief, agent, official, manager, officer, managing partner,

administrator, superintendent, foreman, overseer or representative

of said natural or juridical person."  P.R. Laws Ann. tit. 29,

§ 1322(2).

        José Medina, Pedro Medina, the Medina-Medina conjugal

partnership, and the Medina-Mazorra conjugal partnership skip past

the Caballer court's characterization of the definition as broad

to focus on a qualification by the Caballer court.  With respect

to Law 69, the Caballer court held that "whenever the law mentions

'employer', it does not always refer to the same thing.  In each

article mentioning 'employer', the nature of the liability or the

imposed prohibition must be evaluated to determine to which

components of that broad definition the responsibility or

prohibition applies."  See Docket No. 31, Ex. 3 at p. 5.

        The Caballer court's qualification pertaining to Law 69

is, however, inapplicable here.  According to the Caballer court,

that qualification is a product of limiting language in Law 69

stating that the definitions apply "[f]or the purposes of

[Law 69] . . . except when they are clearly incompatible with the

purposes of this chapter." <u>See</u> Docket No. 31, Ex. 3 at p. 5 (quoting P.R. Laws Ann. tit. 29, § 1322). The broad definition of employer pertaining to Law 100 is not similarly limited. <u>See</u> P.R. Laws Ann. tit. 29, § 151(2).

A different part of the <u>Caballer</u> decision is more germane. Analyzing Law 17, the <u>Caballer</u> court held that in some contexts individual liability is excluded because in those contexts "the law refers to duties that correspond to the employer or to acts that can only be committed by him [sic]. Thus, the responsible subject varies depending on the proscribed behavior." <u>See</u> Docket No. 31, Ex. 3 at p. 5. Applying that holding here, José Medina, Pedro Medina, the Medina-Medina conjugal partnership, and the Medina-Mazorra conjugal partnership argue that the alleged discrimination was done pursuant to authority delegated by MVP. (Docket No. 12 at pp. 11–12.)

The <u>Caballer</u> court's discussion of Law 17 is applicable to Law 100. The <u>Caballer</u> court cabined the <u>Rosario</u> decision by explaining that the <u>Rosario</u> court only needed to consider provisions related to sexual harassment. <u>See</u> Docket No. 31, Ex. 3 at p. 5-6. Other provisions, the <u>Caballer</u> court explained, could

prohibit individual liability "depending on the proscribed behavior."[3]  Id.

Here, Villamía invokes some aspects of Law 100 only appurtenant to the "natural or juridical person employing laborers, workers or employees."  See Docket No. 1 at p. 15. Specifically, Villamía's allegations concerning his demotion and dismissal, see id., concern prohibitions "refer[ring] to duties that correspond to the employer or to acts that can only be committed by him," see Caballer, Docket No. 31, Ex. 3 at p. 5.

Villamía also invokes other aspects of Law 100 which can also apply to a person like a supervisor.  See Docket No. 1 at p. 15.  Villamía alleges that the discriminatory practices created a hostile work environment.  See Docket No. 1 at p. 15.  This allegation, like sexual harassment, is something that any person can cause "regardless of the degree of control or authority they hold."  Caballer, Docket No. 31, Ex. 3 at p. 6.

---

[3] In this way, José Medina, Pedro Medina, the Medina-Medina conjugal partnership, and the Medina-Mazorra conjugal partnership are incorrect in their belief that the decision in Rosario, as clarified by Caballer, is limited to sexual harassment cases.  See Docket No. 12 at p. 9.  There is no such statement in either decision.  To the contrary, according to the Rosario court, it is "imperative" that a liberal interpretation be given to laws protecting workers from sexual harassment and discriminatory acts.  Id. at p. 5; see also Otero-Merced v. Preferred Health Inc., 680 F. Supp. 2d 388, 392 n.5 (D.P.R. 2010) (Fusté, J.) (rejecting the argument that Rosario only applies to sexual harassment claims).  The Caballer court requires a functional evaluation of statutory provisions to ascertain whether individual liability applies.  See Docket No. 31, Ex. 3 at p. 5-6.  It does not limit individual liability to sexual harassment claims.  See id.

Accordingly, the motions to dismiss the Law 100 claims on the basis that Law 100 does not impose individual liability, (Docket No. 12 at pp. 8–13; Docket No. 19 at p. 2,) are **GRANTED IN PART AND DENIED IN PART**. Villamía's Law 100 claims concerning demotion and dismissal asserted against the defendant conjugal partnerships and the individuals, (Docket No. 1 at p. 15,) are **DISMISSED WITH PREJUDICE**.[4]

D.    **Timeliness of Law 100 Individual Liability Claims**

The statute of limitations for a claim pursuant to Law 100 is one year. Ruiz-Ares v. Walgreens Co., Civ. No. 04-2365, 2008 WL 11501547, at *5 (D.P.R. Sept. 2, 2008) (Pérez-Giménez, J.). "A cause of action under Law 100 accrues on the date that the employee becomes aware of the adverse personnel action . . . ." Id.

Filing an administrative claim with the EEOC may toll the statute of limitations. See id. "Once the plaintiff has filed the claim and notified the employer-defendant of its filing, the one-year prescriptive period is suspended throughout the duration

---

[4] In their motions to dismiss, José Medina, Pedro Medina, the Medina-Medina conjugal partnership, and the Medina-Mazorra conjugal partnership note that Villamía only alleges ADEA and Law 100 claims against them as individuals yet they seek dismissal of all claims against them out of an abundance of caution. (Docket No. 12 at p. 3.)  In his response, Villamía only discusses the Law 100 claims.  (Docket No. 18.)  Based on the language of Villamía's complaint and his response, the Court concludes that the only claims asserted against the defendant conjugal partnerships and individuals are ADEA and Law 100 claims.

of the administrative proceedings and until the employer-defendant[] is notified of the agency's decision." Id.

"[I]n order for an administrative complaint before the . . . EEOC to toll the statute of limitations for a cause of action under . . . Law 100, each particular defendant needs to have been notified of the filing of the administrative complaint." Ortiz v. Valdés, 714 F. Supp. 2d 230, 232 (D.P.R. 2010) (Gelpí, J.). "The mere inclusion of the individual defendants' names in Plaintiff's addendum to the administrative charge, which relates the alleged discriminatory events, does not suffice for an extrajudicial claim where 'the debtor or passive subject of the right' did not personally receive notice." Id. at 233.

In this case, Villamía's administrative charge was not personally notified to the defendant conjugal partnerships or the individuals. See Docket No. 12, Ex. 1. Villamía does not allege in his complaint that the charge was personally notified to the defendant conjugal partnerships or the individuals. See Docket No. 1. The charge itself gives no indication that the defendant conjugal partnerships or the individuals received notice. See Docket No. 12, Ex. 1. It makes no difference that José Medina and Pedro Medina were mentioned in the narrative included with the charge. Ortiz, 714 F. Supp. 2d at 233.

In his response to the dismissal motions, Villamía asserts that the individuals in the conjugal partnerships were notified of the administrative charge through their legal representation. (Docket No. 18 at p. 9.) The only support for the assertion, however, is the fact that the EEOC copied the legal representatives in its notice of Villamía's right to sue once its process was finished. See id. (citing Docket No. 1, Ex. 1.) There is no evidence or allegation that the defendant conjugal partnerships and individuals, or their attorneys, were notified at the outset of the filing of the administrative charge. The right-to-sue notice is merely notice of the agency's decision that would ordinarily end a tolling period, Ruiz-Ares, 2008 WL 11501547, at *5, but here there is no indication that the tolling period ever began.

Additionally, Villamía brings to the Court's attention the Puerto Rico Supreme Court's decision in Matos-Molero v. Roche Products, Inc., 132 D.P.R. 470 (1993) (translated at Docket No. 37 at p. 22). See Docket No. 18 at p. 7 (citing Matos-Molero). This decision, however, is irrelevant to the question before the Court. The Matos-Molero court did not decide what constitutes sufficient notice; the decision simply states in passing that the employer received notice before moving to the disputed questions in the case. See Docket No. 37 at p. 22. Indeed, the decision did not

even involve the question of notice to an individual defendant; it appears that the only defendant in the case is the employer. <u>See</u> <u>id.</u>

Thus, the Court must determine whether the claims against the defendant conjugal partnerships and individuals were filed within the one-year statute of limitations. Based on the allegations in the complaint, the latest possible date that Villamía could have become aware of the hostile work environment is July 14, 2018. (Docket No. 1 at p. 11.) On July 14, Villamía received the two dismissal letters, and his complaint does not identify any subsequent discriminatory actions. <u>Id.</u> Villamía filed his complaint on July 23, 2019. <u>See</u> Docket No. 1. Since more than one year passed between those two dates, the hostile work environment claims pursuant to Law 100 against the defendant conjugal partnerships and individuals are time-barred. As a result, the motions to dismiss those claims on timeliness grounds, (Docket No. 12 at p. 13; Docket No. 19 at p. 2,) are **GRANTED**, and the claims against the defendant conjugal partnerships and individuals, (Docket No. 1 at p. 15,) are **DISMISSED WITH PREJUDICE.**

## IV.  Conclusion

José Medina and the Medina-Mazorra conjugal partnership's motion to dismiss, (Docket No. 12,) is **GRANTED**.  Villamía's claims against José Medina and the Medina-Mazorra conjugal partnership pursuant to the ADEA and Law 100, (Docket No. 1 at pp. 13–15,) are **DISMISSED WITH PREJUDICE**.

Pedro Medina and the Medina-Medina conjugal partnership's motion to dismiss, (Docket No. 19,) is **GRANTED IN PART AND DENIED IN PART**.  Villamía's claims against Pedro Medina and the Medina-Medina conjugal partnership pursuant to Law 100, (Docket No. 1 at p. 15,) are **DISMISSED WITH PREJUDICE**.

MVP's request for dismissal of the complaint, (Docket No. 13,) is **DENIED**.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, January 15, 2020.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE